UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MARGARET M. STIER,
          Plaintiff,

v.                                               Case No. 13-C-1199

PROHEALTH CARE, INC.,
          Defendant.

## DECISION AND ORDER

Margaret Stier alleges that ProHealth Care, Inc. ("ProHealth"), constructively terminated her employment in violation of the Age Discrimination in Employment Act ("ADEA"). She also alleges that ProHealth had a written human-resources policy that created a contract under which she could be terminated only if ProHealth followed certain procedures, which it did not follow in this case. Finally, she alleges that ProHealth's failure to pay severance benefits that were commensurate with her years of service constituted breach of contract.

ProHealth has filed a motion for partial judgment on the pleadings, see Fed. R. Civ. P. 12(c), in which it seeks dismissal of plaintiff's breach-of-contract claims (but not her ADEA claims) for failure to state a claim upon which relief can be granted. In response to this motion, plaintiff filed a motion to amend her complaint. The amended complaint adds allegations in support of plaintiff's claims for breach of contract. ProHealth opposes the motion to amend, arguing that the amendments do not result in the complaint's stating claims for breach of contract. To resolve the motion for judgment on the pleadings and the motion to amend, I will grant the motion to amend and then determine whether the claims

for breach of contract, as pleaded in the first amended complaint, state valid claims for relief. If they do not, I will grant defendant's motion for judgment on the pleadings with respect to those claims.

## I. BACKGROUND

In 1969, plaintiff began working as a nurse for one of the hospitals that is now part of ProHealth. Over the years, she received various promotions, and in 2004 she became the manager of the Lawrence Center, a residential-treatment facility for chemically dependent patients. Plaintiff's supervisor was the director of ProHealth's division of behavioral health. In 2006, ProHealth appointed Kathy Becker as director of this division, and the complaint alleges that Becker did not treat the plaintiff well.

In early 2008, plaintiff decided to complain to ProHealth's director of human resources, Barbara Gromacki, about Becker. Gromacki told Becker about plaintiff's complaint, and then both Becker and Gromacki encouraged plaintiff to transfer to a different position in the ProHealth system. Initially, plaintiff explored the possibility of transferring to a different position and identified a position that she was interested in. However, on July 23, 2008, Becker and Gromacki met with plaintiff and informed her that the position she wanted was not available, that she was not suited to continue as manager of the Lawrence Center, and that there was no management position anywhere in the ProHealth system for which she was qualified. Becker and Gromacki told plaintiff that she must either leave her employment with ProHealth immediately, leave her employment in four weeks, or retire by September 1, 2008. Plaintiff retired on September 1, 2008.

Plaintiff alleges that ProHealth had adopted a "policy and procedure" that pertains to employee discipline. The policy and procedure was known as the "Performance

Improvement Action Plan" (the "Plan"), and it stated that it was "to be used to encourage an employee to improve performance when conduct and/or performance is not at acceptable levels." (Am. Compl. Ex. 1.) An introductory section of the Plan described it as follows:

> Standards of conduct and performance are appropriate where groups of people work together and where employees represent an employer to customers. Such standards also provide for the safety of employees, customers/patients, visitors, etc. When an employee's behavior (conduct, performance) is below standard, management intervention should focus on progressive performance improvement. Initial emphasis is developmental and coaching. If improvement is not noted, additional coaching may be accompanied by warnings, suspension and ultimately termination of employment.
>
> Developmental and coaching techniques can be used to assist employees to attain acceptable standards of conduct/performance. This approach can provide the positive incentives to encourage progressive performance improvement.
>
> When this coaching is not effective, a more corrective action may be used, such as, extending the introductory period, withholding a pay increase, withholding an internal job transfer, and/or beginning a formalized performance improvement action.

(First Am. Compl. Ex. 1 at p. 2.) The Plan identifies four "performance improvement action levels," which appear to form a system of progressive discipline. The first two levels of discipline result in documented warnings, the third level results in probation or a suspension, and the fourth level results in termination. The Plan also provides that certain "serious offenses," such as disclosure of confidential patient information and physical mistreatment of patients, could result in immediate termination.

The plaintiff alleges that "both employees and managers of [ProHealth] agree that they are obligated to follow the policy and procedure with respect to performance management, performance evaluation, performance improvement, discipline and

3

discharge." (First Am. Compl. ¶ 11.) She alleges that she "was instructed by [ProHealth] human resources personnel that it was her obligation to follow the policy and procedure and to communicate that obligation to her employees, who were likewise obligated to follow the policy and procedure." (Id.) She alleges that the policy and procedures "were distributed to employees with accompanying admonitions that they were required to read and understand them." (Id.)

Finally, plaintiff alleges that ProHealth may have had an internal policy concerning the payment of severance benefits, and that ProHealth did not pay her the full amount of severance she was due under this policy. Her specific allegations concerning the existence of this policy and ProHealth's noncompliance with it are the following:

> Mr. Robb Simcock, Outpatient Services Manager in the [ProHealth] Behavioral Division[,] was offered a resignation-or-be-terminated "choice" in 2007. At the time he was 45 years of age and had worked at [ProHealth] for ten years, five as a manager. He was allowed to resign with a four-month severance payment. Ms. Stier, who had been employed for nearly 39 years, 30 of which were in management positions, and who was over 60, was offered a six-month severance. [ProHealth] has a practice-in-fact and may have a policy and procedure governing severance payments to its employees, and years of service may constitute the measure of severance by [ProHealth] pursuant to that practice-in-fact and/or policy and procedure. Ms. Stier was accordingly shorted by proportionately 15 months of severance. When she inquired about the severance amount in connection with the alleged "options" presented to her on July 23, 2008, she was told that she would not be provided anything more than six months of severance in connection with her termination.

(First Am. Compl. ¶ 21.)

## II. DISCUSSION

A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6). Adams v. City of Indianapolis, 742 F.3d 720, 727–28 (7th Cir. 2014). To survive a motion to dismiss

4

for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Co. v. Twombly, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Id. This means that "the complaint taken as a whole must establish a nonnegligible probability that the claim is valid, though it need not be so great a probability as such terms as 'preponderance of the evidence' connote." Atkins v. City of Chicago, 631 F.3d 823, 832 (7th Cir. 2011).

**A.      Claims for Breach of Performance Improvement Action Plan**

Under Wisconsin law, employment is generally terminable at will. See, e.g., Heinritz v. Lawrence University, 194 Wis. 2d 606, 611 (Ct. App. 1995). However, if in a handbook or other document the employer makes a promise to an employee regarding the terms and conditions of employment and asks the employee for a responsive promise, the employment can "ripen into something other than an employment relationship terminable at will." Ferraro v. Koelsch, 124 Wis. 2d 154, 166 (1985). In the present case, several counts in the complaint are premised on plaintiff's contention that the Performance Improvement Action Plan contained promises from ProHealth concerning the conditions under which plaintiff could be terminated. Plaintiff contends that she accepted these promises and gave as consideration her promise to abide by the terms of the Plan. Thus, argues plaintiff, the Plan constitutes part of a binding employment contract, which ProHealth breached when it terminated her without following the Plan. The defendant

5

contends that the first amended complaint does not contain allegations from which the court can infer that the Plan created an employment contract under which the plaintiff was not terminable at will.

The Plan itself does not contain any terms that could be construed as a promise by ProHealth to alter the presumptively at-will character of plaintiff's employment. Instead, the Plan states that it is to be used to "encourage" an employee to improve performance and recommends that managers follow the Plan when dealing with an employee whose performance is "below standard." (First Am. Compl. Ex. 1 at pp. 1–2.) The Plan does not state or imply that an employee can be terminated only for cause or that ProHealth will not terminate an employee without following the system of progressive discipline outlined in the Plan. Although the Plan has a section dealing with termination of employment, see id. at p. 3, that section does not indicate that an employee may be terminated only for certain reasons or only after all or some of the preceding steps in the system of progressive discipline have been exhausted. In fact, the section dealing with termination does not even purport to comprehensively explain the circumstances under which an employee could be terminated. The termination section gives examples of "serious offenses" that constitute grounds for immediate termination, but it also makes clear that other, unspecified serious offenses could be grounds for immediate termination. Id. (stating that "serious offenses that could result in immediate dismissal include, but are not limited to . . . ." (Emphasis in original)). More importantly, the termination section does not state or imply that an employee cannot be terminated immediately for reasons that are unrelated to serious offenses. It does not, for example, state or imply that ProHealth cannot terminate an employee immediately if it is eliminating that employee's position or if it determines that the

6

employee and his or her supervisor cannot get along.  Indeed, nothing in the termination section states or implies that ProHealth could not immediately terminate an employee for no good reason at all.  In short, the terms of the Plan indicate that it is merely the preferred method for dealing with an employee who is not meeting ProHealth's basic expectations.  The terms do not suggest that the Plan must be followed in every instance in which ProHealth wishes to terminate an employee.  Thus, the terms of the Plan do not constitute a promise to alter the presumptively at-will character of the plaintiff's employment.

Moreover, the allegations in the first amended complaint do not indicate that ProHealth made any separate promise to the plaintiff that it would terminate her employment only after it followed the system of progressive discipline outlined in the Plan.  The first amended complaint alleges only that employees and managers at ProHealth were required to follow the Plan.  (First Am. Compl. ¶ 11.)  But as just explained, the Plan does not identify all grounds for immediate termination or prohibit supervisors from terminating an employee for any reason.  Thus, the allegation that employees and managers were required to follow the Plan does not give rise to a plausible claim for breach of contract.  To state a plausible claim, the plaintiff would need to allege that she was told that she could be terminated only after the procedures outlined in the Plan were followed.  Because no such allegation appears in the complaint, her claim will be dismissed.

**B.	Claim for Breach of Severance Plan**

The remaining claim on which ProHealth moves for judgment on the pleadings is plaintiff's claim that ProHealth breached a contract concerning severance benefits.  In this claim, the plaintiff alleges that ProHealth may have had a policy or practice of paying severance benefits to a terminated employee based on the employee's years of service.

The plaintiff alleges that although she was offered six months of severance, she suspects that, because of her long tenure with ProHealth, she was entitled to 21 months of severance. (First Am. Compl. ¶ 21.) The basis for her suspicion is her knowledge that an employee who had worked for ProHealth for only ten years received four months of severance. (Id.) The defendant moves for judgment on this claim on the ground that no allegation of the complaint suggests that ProHealth had ever promised to pay the plaintiff severance benefits in proportion to her years of service.

The first amended complaint does not allege that ProHealth had ever promised to pay the plaintiff severance benefits in proportion to her years of service. Instead, it alleges that ProHealth may have had a policy under which it paid severance benefits to employees that were calculated based on the employee's years of service. (First Am. Compl. ¶ 21.) But even if ProHealth had such a policy, the policy could not form the basis of a breach-of-contract claim unless the plaintiff was told about it. If ProHealth never told the plaintiff about the policy, then ProHealth never made any offer concerning severance to the plaintiff, and so no contract could have been formed. See, e.g., In re F.T.R., 349 Wis. 2d 84, 115 (2013) (the elements of contract formation are offer, acceptance, and consideration). Plaintiff's complaint contains no allegations suggesting that ProHealth ever told the plaintiff that she would be paid severance benefits based on her years of service. The complaint contains only the plaintiff's suspicion that a policy concerning severance and years of service may exist, which is not based on anything ProHealth told the plaintiff, but on inferences the plaintiff drew from her knowledge of the severance benefits paid to a different employee. Thus, the complaint does not suggest that ProHealth made any offer that could form the basis of a breach-of-contract claim involving the failure to pay

8

severance benefits.  Accordingly, this claim will be dismissed.  Before concluding, I note that in addition to alleging that ProHealth's failure to follow its severance policy constitutes breach of contract, the plaintiff alleges that such failure constitutes age discrimination. (First Am. Compl. ¶ 37.)  ProHealth has not moved for judgment on the age-discrimination claim.  Thus, although I will dismiss the breach-of-contract claim based on the severance policy, the plaintiff may continue to pursue discovery concerning the existence of the policy, as it is relevant to her age-discrimination claim.

### III.  CONCLUSION

For the reasons stated, **IT IS ORDERED** that plaintiff's motion for leave to file a first amended complaint is **GRANTED**.

**IT IS FURTHER ORDERED** that defendant's motion for partial judgment on the pleadings is **GRANTED**.  The second, fourth, sixth, and eighth causes of action in the first amended complaint are dismissed.

Dated at Milwaukee, Wisconsin, this 2nd day of July, 2014.


s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge